343 So.2d 605 (1977)
STATE of Florida, Appellant,
v.
Jonathan F. WERSHOW et al., Appellees.
No. 50077.
Supreme Court of Florida.
February 25, 1977.
*606 Robert L. Shevin, Atty. Gen., Raymond L. Marky, Asst. Atty. Gen., Eugene T. Whitworth, State Atty., and William E. Whitley, Asst. State Atty., for appellant.
Henry L. Gray, Jr., of Chandler, O'Neal, Gray & Lang, Fletcher N. Baldwin, Jr., Gerald T. Bennett and Wayne M. Carroll, Gainesville, for appellees.
KARL, Justice.
This cause is before us on direct appeal from an order of the County Court for Alachua County declaring Section 839.11, Florida Statutes, unconstitutionally vague and granting the motions to dismiss the indictment against the appellees. Jurisdiction vests in this court pursuant to Article V, Section 3(b)(1), Florida Constitution.
Appellees, County Commissioners of Alachua County, were charged by indictment with twenty-one counts of malpractice in office, each count charging violation of Section 839.11, Florida Statutes. The penal statute provides:
"839.11 Extortion and malpractice generally.  Any officer of this state who willfully charges, receives or collects any greater fees than he is entitled to charge, receive, or collect by law, or who is guilty of any malpractice in office not otherwise especially provided for, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083." (emphasis supplied)
The charges against the appellees do not involve the willful charging, receiving or collecting of fees greater than authorized by law. Their offenses fall within that portion of the statute which purports to *607 punish "malpractice in office not otherwise provided for."
Charged violations included, inter alia, approving or voting to approve the purchase of new voting machines without taking competitive bids or having the Chairman of the Board of County Commissioners certify to the Department of State that the situation and conditions required an exception to the competitive bidding law; failing to keep and maintain adequate records, or failing to see that adequate records were kept and maintained, regarding the use of county funds; approving the misappropriation of trust money of the Public Facilities Authority as loans to Alachua County; approving the misappropriation of construction trust funds to pay current obligations of Alachua General Hospital; failing to provide written guidelines to Alachua County Business Services Department employees regarding their duties and responsibilities; permitting, or failing to supervise properly their staff who permitted, contractors of certain capital projects for Alachua County to go without performance bonds to indemnify the Board of County Commissioners of Alachua County against loss; and authorizing the use of funds from the State Mosquito Control Fund for other purposes during the fiscal year 1973-1974.
Motions to dismiss the indictment were filed by appellees who alleged that Section 839.11, Florida Statutes, upon which all counts of the indictment are based, is vague, indefinite and uncertain in its terms and, thereby, denies them due process of law as guaranteed by Article I, Section 9, Florida Constitution, and the Fourteenth Amendment to the United States Constitution; that the statute is being selectively enforced; that the charges in the indictment contain no allegations that appellees willfully or corruptly failed to perform any duty imposed upon them by law; that the charges in the indictment contain no allegations that the defendants intentionally and maliciously, or voluntarily, unlawfully, or without justification or excuse failed to perform any duty imposed upon them by law; that the statute of limitations had run on several of the counts; and that the indictment does not charge any offense under the laws of this state.
Finding that the portion of Section 839.11, Florida Statutes, under which the defendants are charged is vague, indefinite and uncertain in its terms and is, therefore, unconstitutionally violative of the due process clauses of the Florida and federal constitutions, the trial court dismissed the indictment against appellees and reasoned:
"Reduced to its essential language, the statute says that `any officer of this state ... who is guilty of any malpractice in office not otherwise especially provided for shall be guilty of a misdemeanor of the first degree.' ...
"The term `malpractice in office' is susceptible of so many different interpretations that it necessarily compels men of common intelligence to guess at its meaning and differ as to its application. It therefore violates the requirements of constitutional due process."
Appellant urges the court to uphold the validity of the questioned statute by construing it in a manner that will avoid conflict with the Constitution. We recognize that this court has consistently followed the established precept that, if reasonably possible and consistent with constitutional rights, it should resolve all doubts of a statute in favor of its validity. However, we conclude that the subject statute is so vague and overbroad that it is not amenable to such saving construction unless the court is willing to invade the province of the Legislature and virtually rewrite it. Under our constitutional system, courts cannot legislate. Article II, Section 3, Florida Constitution. State v. Egan, 287 So.2d 1 (Fla. 1973). Quoting from and relying upon the holding of the decision of the Supreme Court of the United States in Yu Cong Eng et al. v. Trinidad, 271 U.S. 500, 46 S.Ct. 619, 70 L.Ed. 1059, this court, in Locklin v. Pridgeon, 158 Fla. 737, 30 So.2d 102 (1947), stated:
"The court cannot, in order to bring a statute within the fundamental law, amend it by construction."

*608 "A statute which requires the doing of an act so indefinitely described that men must guess at its meaning violates due process of law."
"A statute cannot in order to make it conform to constitutional requirements, be given an indefinite mandatory construction in lieu of the broadly prohibitory meaning indicated by its language."

"Generally, inclusive terms in a criminal statute cannot be reduced by construction so as to limit its application only to that class of cases which it was within the power of the legislature to enact, and thus save the statute from invalidity." (emphasis supplied)
To construe Section 839.11, Florida Statutes, as the state here suggests would require an abandonment of judicial restraint. We are unwilling to do so. Appropriately applicable to this discussion is the following excerpt from the dissenting opinion of Justices Roberts, Frankfurter and Jackson in Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1944):
"... to subject to criminal punishment conduct that the court may eventually find to have been within the scope or limitations of a legal doctrine underlying a decision is to satisfy the vital requirement of definiteness through an appearance of definiteness in the process of constitutional adjudication which every student of law knows not to comport with actuality. What the Constitution requires is a definiteness defined by the legislature, not one argumentatively spelled out through the judicial process which, precisely because it is a process, can not avoid incompleteness. A definiteness which requires so much subtlety to expound is hardly definite."
When construing a penal statute against an attack of vagueness, where there is doubt, the doubt should be resolved in favor of the citizen and against the state. Criminal statutes are to be strictly construed according to the letter thereof. Ex parte Bailey (1897), 39 Fla. 734, 23 So. 552, State v. Buchanan, 191 So.2d 33 (Fla. 1966), State v. Llopis, 257 So.2d 17 (Fla. 1971), State v. Dinsmore, 308 So.2d 32 (Fla. 1975). Discussing generally the construction to be given penal statutes, this court, in Ex parte Amos, 93 Fla. 5, 112 So. 289 (1927), explicated:
"The statute being a criminal statute, the rule that it must be construed strictly applies. Nothing is to be regarded as included within it that is not within its letter as well as its spirit; nothing that is not clearly and intelligently described in its very words, as well as manifestly intended by the Legislature, is to be considered as included within its terms; and where there is such an ambiguity as to leave reasonable doubt of its meaning, where it admits of two constructions, that which operates in favor of liberty is to be taken. See Ex parte Bailey, supra."
The requirements of due process of Article I, Section 9, Florida Constitution, and the Fifth and Fourteenth Amendments to the Constitution of the United States are not fulfilled unless the Legislature, in the promulgation of a penal statute, uses language sufficiently definite to apprise those to whom it applies what conduct on their part is prohibited. It is constitutionally impermissible for the Legislature to use such vague and broad language that a person of common intelligence must speculate about its meaning and be subjected to arrest and punishment if the guess is wrong. The Supreme Court of the United States, in United States v. Reese, 92 U.S. 214, 23 L.Ed. 563 (1876), opined:
"It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government."
The test of vagueness of a statute as being whether the language conveys a sufficiently definite warning of the proscribed conduct when measured by common understanding and practice was succinctly stated *609 by this court in Brock v. Hardie, 114 Fla. 670, 154 So. 690 (1934), as follows:
"... Whether the words of the Florida statute are sufficiently explicit to inform those who are subject to its provisions what conduct on their part will render them liable to its penalties is the test by which the statute must stand or fall, because, as was stated in the opinion above mentioned, `a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.'
"Such seems to be the test approved by the Supreme Court of the United States. Citation of authorities as to what may be considered the exact meaning of the phrase `so vague that men of common intelligence must necessarily guess at its meaning,' so that certain conduct may be considered within or outside the true meaning of that phrase, or what language of a statute may lie within or without it, would be of little aid to us.
"We must apply our own knowledge with which observation and experience have supplied us in determining whether words employed by the statute are reasonably clear or not in indicating the legislative purpose, so that a person who may be liable to the penalties of the act may know that he is within its provisions or not." (emphasis supplied)
More recently, this court in State v. Llopis, supra, held:
"When exercising its power to declare an offense punishable, the Legislature must inform our citizens with reasonable precision what acts are prohibited. There must be provided an ascertainable standard of guilt, a barometer of conduct must be established, so that no person will be forced to act at his peril. Cramp v. Board of Public Instruction of Orange County, Florida, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285; Locklin v. Pridgeon, 158 Fla. 737, 30 So.2d 102 (1947); State [ex rel. Lee] v. Buchanan, 191 So.2d 33, 336 (Fla. 1966)."
See also State v. Dinsmore, 308 So.2d 32 (Fla. 1975), wherein this court determined Section 112.313, Florida Statutes, to be unconstitutionally vague and indefinite.
No person should be held responsible for conduct which one could not reasonably understand to be prohibited by statute. Not enough emphasis can be placed on the proposition that,
"The vice of vagueness in statutes is the treachery they conceal in determining what persons are included or what acts are prohibited... . No matter how laudable a piece of legislation may be in the minds of its sponsors, objective guidelines and standards must appear expressly in the law or be within the realm of reasonable inference from the language of the law."
Aztec Motel, Inc. v. State ex rel. Faircloth, 251 So.2d 849 (Fla. 1971). To force one to act at one's peril is against the very foundation of our American system of jurisprudence.
This court considered the subject statute in Ex parte Amos, supra. Amos, the comptroller of the state, was charged with failure to perform his duty in not taking possession of the property and business of a certain bank and retaining it in his possession until its affairs were placed in a sound condition, although, as comptroller, he had reason to believe that the bank was in unsound and unsafe condition. The constitutionality of the statute was not determined. The court concluded, however, that the indictment charged no offense because the conduct with which petitioner was charged involved the discretionary power and judgment of the comptroller, and that error in judgment in such case has not by any statute been made a criminal offense. In discussing the statute, the court opined:
"Now, the word `malpractice' is a broad term. It may mean any professional misconduct or unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties, evil practice, illegal *610 or immoral conduct, misbehavior, practice contrary to rules, wrongdoing; it may be either willful, negligent or ignorant. See In re Rosenkrans, 84 N.J. Eq. 232, 94 A. 42; 38 C.J. 519.
The Amos definition of malpractice is controlling, and this decision reinforces our view that the statute is so overly broad and vague that it cannot survive constitutional challenge. The penal statute before us would punish any official committing any act within that broad classification.[1]
Indisputably, the Legislature may make certain described activities criminal offenses without requiring that they be committed willfully. In Smith v. State, 71 Fla. 639, 71 So. 915 (1916), this court stated:
"While all common-law crimes consist of two elements  the criminal act or omission, and the mental element, commonly called criminal intent, it is within the power of the Legislature to dispense with the necessity for a criminal intent, and to punish particular acts without regard to the mental attitude of the doer."
cf. Kirkland v. State, 86 Fla. 130, 97 So. 510 (1923). But by opting to dispense with the necessity for a criminal intent in a penal statute, the Legislature does not avoid, or in any way diminish, the requirement of definiteness.
Measured against the prescribed test of vagueness, we find that the language contained in Section 839.11, to the effect that "... who is guilty of any malpractice in office not otherwise especially provided ..." does not convey a sufficiently definite warning as to the proscribed conduct that men of common understanding could comprehend and that is violative of the due process clauses of the Florida and federal constitutions.
Since we hold that portion of Section 839.11, Florida Statutes, upon which each count of the indictment is based, to be unconstitutionally vague, indefinite and overbroad, we find it unnecessary to resolve the remaining issues posed by Appellant.
Accordingly, the judgment of the trial court granting the motions to dismiss the indictment is hereby affirmed.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, SUNDBERG and HATCHETT, JJ., concur.
ENGLAND, J., dissents with an opinion.
ENGLAND, Justice, dissenting.
I cannot agree with my colleagues' invalidation of Section 839.11, Florida Statutes (1975). That drastic action is neither warranted in this case nor, as oral argument before our Court made clear, seriously urged upon us by the appellees.
The state contends that all of the duties which the 21-count indictment alleges have been neglected or breached by appellees are mandatory duties imposed on county commissioners by specific provisions of Florida law. Of course, each commissioner has sworn to uphold the law and to perform his commission duties "well and faithfully".[1] The state asserts, quite simply, that the notion of constitutional "vagueness" could *611 not possibly pertain to county commissioners charged with acts of "malpractice" which consist solely of a disregard or breach of their statutory responsibilities. A "reasonable and prudent man" standard for motor vehicle violations was found not to be vague in Smith v. State, 237 So.2d 139 (Fla. 1970), and the state suggests that a like standard applied to elected public officials would surely make evident that "malpractice in office" at least means a breach or neglect of statutory responsibilities.
Counsel for the appellees conceded during oral argument that the statute could withstand constitutional scrutiny if "malpractice in office" were construed to mean only mandatory duties prescribed by statute. This concession not only brought the parties together on the validity of the statute, but it provided the means to harmonize the asserted conflict between Ex parte Amos, 93 Fla. 5, 112 So. 289 (1927), and Kirkland v. State, 86 Fla. 130, 97 So. 510 (1923).
Appellees, whose first goal, understandably, is to win their lawsuit, really ask us to quash the indictment against them because it fails to allege willfulness or a breach of fiduciary duty accompanied by the receipt of some personal benefit from the alleged acts. These assertions explain their reliance on Amos and their rejection of Kirkland. In Amos we said:
"The word `malpractice' ... refers to misconduct not necessarily willful in character but constituting a breach of fiduciary duties for a monetary or other unlawful consideration or purpose.
The case of Kirkland v. State, 86 Fla. 130, 97 So. 510, is not inconsistent with this view."[2]
I believe with the majority that the element of willfulness is not essential to this crime,[3] but I also believe the elements required by Amos must be alleged. I would, therefore, remand this case to the trial judge to consider pending motions on the sufficiency of the indictment in light of our adherence to the standards in Amos, as well as the need to allege a neglect or breach of mandatory statutory duties as required by Kirkland.
NOTES
[1] We note that Article IV, Section 7, Florida Constitution, delegates broad powers to the Governor and the Senate in suspending and removing state and county officers for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform his official duties, or commission of a felony. In State ex rel. Hardie v. Coleman, 115 Fla. 119, 155 So. 129 (1934), this court defined the offenses. The constitutional offenses are subject to the same criticism that is leveled against "malpractice" in Section 839.11, Florida Statutes. However, we perceive the test to be much less severe where the maximum penalty is loss of an office or position. Penal statutes must meet a higher test of specificity.
[1] Article II, Section 5(b) of the Florida Constitution provides:

"Each state and county officer, before entering upon the duties of the office, shall give bond as required by law, and shall swear or affirm:
`I do solemnly swear (or affirm) that I will support, protect, and defend the Constitution and Government of the United States and of the State of Florida; that I am duly qualified to hold office under the Constitution of the state; and that I will well and faithfully perform the duties of (title of office) on which I am now about to enter. So help me God.' . .. ."
[2] 93 Fla. at 17, 112 So. at 293.
[3] Smith v. State, 71 Fla. 639, 71 So. 915 (1916).